JACOB WHISLER, Plaintiff in Error, *v.* WILLIAM ROBERTS, Defendant in Error.

ERROR TO FULTON.

In replevin, the affidavit need not allege that the property claimed was unlawfully taken or detained.

Our statute has enlarged the remedy by replevin, and the action is made transitory and no special venue is required.

When the testimony is conflicting, and there are no facts in the case to guide the court, it will be presumed that the jury, having superior opportunities for doing so, properly weighed the testimony.

A mortgagee of personal property, (where the mortgage does not provide that the mortgagor may retain possession,) may, if he gets possession peaceably, retain the property, unless other liens upon it had intervened, while the mortgagor was in possession.

THIS is an action of replevin. The defendant in error commenced his suit against the plaintiff in error, in the Fulton Circuit Court, on the 28th Sept., 1857, by the filing of an affidavit which reads as follows, to wit:

STATE OF ILLINOIS, }
  COUNTY OF FULTON.  }

On this 24th day of September, A. D. 1857, came before me the undersigned circuit clerk of said county, William Roberts, who, being first duly sworn, upon his oath says, that he is owner of and lawfully entitled to the possession of a certain span of mares, both gray, one three years old past, and the other supposed to be ten years old, and the said last mentioned mare being blind of one eye, one two-horse wagon and one set of double harness, all of the value of two hundred

and fifty dollars, and that said property is now in the possession of one Jacob Whisler, of said county and State, and that said chattels have not been taken for any tax, assessment or fine, levied by virtue of any law of this State, nor seized under any execution or attachment against the goods and chattels of him the said William Roberts, and further says not.

The writ issued in the usual form and was returned as follows, to wit:

STATE OF ILLINOIS, ⎰
    FULTON COUNTY. ⎱

I do hereby certify that I have, this 29th day of September, 1857, served the within writ of replevin by delivering the within named personal property to William Roberts.

I have served, by reading the within writ to Jacob Whisler, this 20th day of October, 1857.

WM. M. STANDARD, *Sheriff.*

The declaration contained two counts: 1st, For wrongful taking. 2nd, For a wrongful detention.

At the November term, 1857, WALKER, Judge, presiding, the defendant below, moved the court to dismiss the suit and quash the affidavit and writ, because the affidavit was insufficient. The motion was overruled, and the defendant excepted.

The defendant then filed several pleas, to wit:

1. To the first count, *non cepit.*
2. To the second count, *non detinet.*
3. The property was not the plaintiff's.
4. Property in John Strickland and not in the plaintiff.
5. Property in John Strickland; that the defendant was a constable and had an execution issued by Henry Walker, a justice of the peace, on a judgment rendered by him in favor of Joseph W. Wyman and Henry Hipple *vs.* Strickland, for the sum of $41.50 and costs, which was dated 31st August, 1857, and was placed in defendant's hands on that day, at 9 o'clock; that he had two other executions, issued by Thomas N. Hamilton, a police magistrate for the city corporate of Canton, on judgments rendered by him on the 17th September, 1857, in favor of William and Wilson Hulet, and Townsend Atwater *vs.* Strickland, dated and placed in the hands of the defendant on the same day that the judgments were rendered, one for $63.04 and costs, and the other for $53 and costs; that the defendant took the property by virtue of the first execution and levied upon it, and afterwards, on the 19th Sept., 1857, he levied the two last executions on the property, and so kept and held the same by virtue thereof.

The plaintiff added *similiter* to the 1st and 2nd pleas; to the 3rd, 4th and 5th, replied double: 1st, That the property was the plaintiff's. 2nd, That the plaintiff was entitled to the immediate possession of the property. With the issues tendered the defendant joined.

The issues found were:

1. *Non cepit.*
2. *Non detinet.*
3. The property in plaintiff.
4. The right of the plaintiff to immediate possession.

On the trial before a jury, the plaintiff offered in evidence a chattel mortgage, bearing date Feb. 11, 1857, executed by John Strickland to the plaintiff, conveying the property in controversy, conditioned upon the payment of four notes described to be void, together with two notes set forth in the mortgage, which mortgage was not acknowledged in the manner required by the statute, and contained no other condition. One of the notes was assigned by the plaintiff to Lorenzo Roberts. At the same time the plaintiff proved by B. C. Johnson that Strickland had acknowledged to him that he had executed the mortgage.

The defendant objected to this evidence, but the court overruled the objection and permitted the mortgage and notes to be read by the jury.

The plaintiff produced *Lorenzo Roberts* as a witness, who testified that he was the father of the plaintiff; that the horses and wagon had once been owned by the plaintiff, but in February last he had sold them to Strickland and took the mortgage to secure the payment; that in the month of July, before corn was ripe, after wheat was cut and stacked, the plaintiff, witness, Strickland and Stephen Roberts were at the place where Strickland had resided, under a shed, when plaintiff said to Strickland that he wanted him to make him safe for the pay on the horses and wagon, to which Strickland replied that he would make him safe; the plaintiff proposed to take the property, which was near by, and put in the pasture of witness, about a quarter of a mile distant, and go to Canton, (15 miles distant,) to see if it could not be arranged; they were to remain there until the arrangement was made; to this Strickland agreed; the horses and wagon were then taken; the horses put in pasture, and wagon in barnyard of witness; the plaintiff, witness and Strickland went to Canton with the team and wagon of Stephen Roberts; a short time afterwards the defendant and Wilson came to the house of the witness, searching for the property, to levy on it with executions against Strickland.

On cross-examination, the witness stated that at the time of the transaction, Strickland had partly removed east of the

Illinois river, and plaintiff gave that as a reason for desiring to make the arrangement; they talked of going to see Hulets and Atwater, and Wyman, at Canton, and were to see them to make the arrangement; the property was to be left in the pasture until they went to Canton and made the arrangement; nothing was said as to what should be done in case it was not made; no arrangement was made; something was said while at Canton, about Strickland confessing judgments to Hulets and Atwater, and execution issuing; they returned from Canton in the evening, and the horses and wagon were gone; Strickland asked for them, got mad and swore pretty hard because they had been taken away, and said he would have them if they were to be found; the conversation took place, the property was left at the pasture, and the parties went to Canton and returned, all on the same day; at the time wheat had been cut and stacked; harvest was late; the time must have been the last of August or first part of September, but could not state the time exactly.

The plaintiff then produced *Stephen Roberts*, who testified that the time of the transaction was the last of August or first part of September; that Strickland said he would not be able to keep the team and wagon unless some arrangement was made; that he would go to Canton and give plaintiff personal security, and until it was done the property should be put in Lorenzo Roberts' pasture; in the evening, when the parties returned, there were some hard words by Strickland, because the horses and wagon were gone; that evening the witness delivered the property to plaintiff, and the next day (Friday) witness took them to Prairie City, in McDonough county, and left them in the care of Mr. White; the next day after that (Saturday) witness saw Strickland driving the horses and wagon towards Canton, between Ellisville and Canton, and in Fulton county.

On cross-examination, the witness stated that the officers at Canton then had execution against him; in the evening, when they returned, Strickland said the property was his, and swore he would have the horses and wagon if he waded in blood up to his knees. He staid about fifteen minutes and left, going in the direction of his father-in-law's. In the morning, before they started to Canton, the plaintiff told the witness to put the horses and wagon where Strickland could not find them when they came back. While they were gone, witness moved them into a lot back of the house, out of sight; started the next morning before daylight, under the direction of the plaintiff, to Prairie City, arriving there about noon. The witness started on his return about two o'clock, and near dark, between Ellisville and home, the witness met Strickland going to Prairie City for the team. The next day witness saw Strickland with the property, going to Canton.

On re-examination by plaintiff, the witness said after the time he saw Strickland driving the team to Canton, and before the commencement of this suit, he, in company with plaintiff, met defendant on the sidewalk, in Canton; plaintiff there told the defendant he wanted the wagon and horses; the defendant said he had them, and he could not have them unless he got them according to law.

On further cross-examination, he said that at the time of this conversation he did not know where the property was; he had not seen it from the time Strickland was driving it until after this suit was commenced, when it was delivered by the sheriff to the plaintiff.

The plaintiff then called on defendant to produce the executions described in the 5th plea, which were produced, and by the plaintiff offered in evidence with their endorsements. The defendant objected, and the court sustained the objection.

Stephen Roberts was recalled, and testified that the time of the leaving the horses in the pasture, etc., was on the last Thursday of August.

On cross-examination, he stated that he knew it was on that day because he had a note to Wheeler which fell due on that day, and which he paid on the day it was due, the 26th or 27th of August; the note was at home in his trunk, and he had not seen it since the day he paid it.

The defendant then, in support of the issues on his part, produced *John Strickland,* who testified that he was the defendant in the executions, and the mortgagor of the property; that at the time of the conversation at the shed, and leaving the horses in the pasture, etc., he had partly removed to Tazewell county, and had taken his family there; that his business back was to make an arrangement with the plaintiff in pursuance of an agreement. The plaintiff had proposed to take back the property, refund $140 he had received, and rescind the sale. They went to Canton for the plaintiff to borrow the $140 to repay witness. He was unable to do so, and the arrangement fell through in consequence. While at Canton, witness confessed two judgments in favor of Hulets and Atwater, before Hamilton, police magistrate, and executions were issued, and placed in defendant's hands on the same day. This was in September. At the time, defendant had other executions against witness— one in favor of Wyman and Hipple, and another in favor of Jesse Walling, for the use of Stephen Smith. When the parties returned from Canton, the horses and wagon were gone, and he could not find them. Stephen Roberts said he didn't know where it was. The witness stayed that night at Mr. Wilson's. The next morning, in company with Wilson and the defendant,

the witness went to Lorenzo Roberts' to find the property. The plaintiff and Stephen Roberts were not there; Lorenzo Roberts was; the property was not there; Lorenzo Roberts at first disclaimed any knowledge of where it was, but afterwards admitted it was at Prairie City. The witness then started to Prairie City for it, and defendant and Wilson back to Canton. In the conversation at the shed, the witness did not propose to give security to the plaintiff; the witness did not deliver the team to be held under the mortgage.

*John Wilson* was then produced, and testified that in the month of September he went with the defendant and Strickland to the house of Lorenzo Roberts, to look for the horses and wagon. Lorenzo was at home, but Stephen and plaintiff not. We found out that the property was in Prairie City, when Strickland started there for it; defendant and witness started back to Canton and directly met plaintiff; the plaintiff denied all knowledge of the property, but on being informed that we had found out, he admitted that it was at Prairie City, and that he sent it there. The defendant told plaintiff that it was wrong to run off Strickland's team; told plaintiff that the property belonged to Strickland, and he had gone for it. Plaintiff said he wanted to make his debt safe. The defendant advised the plaintiff to go to Prairie City and give it up to Strickland. After some further talk of the same purport, the plaintiff, on leaving, said he would go home, and then on to Prairie City, and deliver up the property to Strickland.

On cross-examination, he stated that the plaintiff did not claim the property as his, but said he wanted to save himself and make his debt safe; there was something said about being advised to run it off. ·

The court gave, on the request of the plaintiff, the following instructions, to each of which the defendant excepted:

1. The jury are instructed that it is not necessary, to support this action, that there should be a wrongful taking of the property by the defendant, if the jury believe, from the evidence, that the defendant in this suit had the same in his possession, and wrongfully detained the same after demand to deliver up the same.

2. If the jury believe, from the evidence, that the plaintiff in this case, at the time the suit was commenced, was lawfully entitled to the immediate possession of the property, in the declaration described, and that the defendant had the same in his possession, and that a demand was made, and a refusal to deliver up the same by the defendant, they will find for the plaintiff.

3. The jury are instructed, that under a mortgage like the

one in evidence before the jury in this case, the mortgagee is entitled to the immediate possession of the property mortgaged, and may take the same, and reduce the same into possession, at any time before the rights of creditors, or third persons, attach by purchase, or by lien under execution.

Among other instructions asked by the defendant, the court gave the following, to wit:

5. If the jury believe, from the evidence, that the only claim to the property in the plaintiff was derived from the mortgage in evidence, and that the property was retained in the possession of John Strickland, after the expiration thereof, and that while it was in his possession, any of the executions in the fifth plea was placed in the hands of the defendant, then the law is, that the property was liable to such execution.

6. If the jury believe that the property was voluntarily delivered to the plaintiff, as mortgagee, to remain in his possession before the issuance of the executions, and delivery thereof to the defendant, and that afterwards, and while the executions were in the hands of the defendant, it was voluntarily surrendered by the plaintiff to John Strickland, then the plaintiff would waive his right to claim the property, as against the creditors of Strickland, and the executions in the hands of the defendant would become a lien on the property.

The defendant prayed the following instruction, which the court refused to give, and exception was taken:

8. If the jury believe, from the evidence, that the property was delivered by John Strickland to the plaintiff, to remain until evening, and to be delivered back if the amount paid on property was refunded, the plaintiff would not be justified in, or have the right to retain the same as mortgagee, and the same would be liable to execution against Strickland.

The jury rendered a verdict for the plaintiff.

The defendant moved for a new trial, and also in arrest of judgment. Both motions were overruled, and the defendant excepted.

The errors assigned in this court by the plaintiff in error, are:

1. The Circuit Court erred in refusing to quash the writ and dismiss the suit.

2. The Circuit Court erred in refusing a new trial.

3. The Circuit Court erred in refusing to arrest the judgment.

4. The Circuit Court erred in rendering judgment for the plaintiff.

Goudy & Judd, Attorneys for Plaintiff in Error.

C. L. Higbee and M. Hay, for Defendant in Error.

BREESE, J. The first question presented by the record, is the sufficiency of the affidavit on which the writ of replevin issued. It is urged by the plaintiff in error that it is insufficient, because it does not contain the allegation that the property was unlawfully taken, or unlawfully detained.

The statute, chap. 89, R. L. 1845, title "Replevin," requires no such allegation. The third section of that act provides "that the person or persons bringing such action, or some one in his, her or their behalf, shall, before any writ shall issue, make oath or affirmation before the clerk of the Circuit Court, or any justice of the peace of the proper county, that the plaintiff in such action is the owner of the property described in the writ and about to be replevied, or that he is lawfully entitled to the possession thereof, etc."

The affidavit in question conforms to this provision in every particular, and there can be no necessity of any other averments in it than those prescribed by the statute. We therefore adjudge it sufficient.

It is next urged that the action is local, and therefore there should be an averment of the particular place where the property was taken.

At common law, replevin is a local action, and the place, vill or parish must be averred. Our statute has enlarged this remedy, and made several essential changes in the proceeding, so that it is now a statutory remedy and transitory in its nature, and no special venue required to be stated. The court therefore decided correctly in overruling the motion to quash the writ and affidavit on this ground.

The next objection urged, is the refusal of the court to set aside the verdict, as not sustained by the evidence, and award a new trial.

The main question submitted to the jury was, whether the property was delivered to Roberts under the mortgage to him by Strickland, before the execution in favor of Wyman & Hipple and against Strickland, in the hands of Whisler, as constable, became a lien on Strickland's property.

The proof shows that this execution was placed in the constable's hands on the 31st day of August, 1857. On that day it became a lien on the property in Strickland's hands, as well this, mortgaged to Roberts, as any other property, the plaintiffs in execution having no notice of the mortgage.

To show this was not in Strickland's hands or possession on that day, Stephen Roberts was sworn as a witness, who stated that the property was delivered up by Strickland to William Roberts on the 26th or 27th of August, some four or five days before the delivery of the execution to the officer. On the other

hand, John Strickland testified that he put the property in Roberts' possession, temporarily, on the day certain other executions against him in favor of Hulets and Atwater were issued, and which was on the 17th day of September, 1857.

Now, here the witnesses were directly opposed; there was a conflict in the testimony for the jury to reconcile, it being their peculiar province so to do, or, if they could not reconcile it, then to determine to which witness they would give the most credit.

In determining this, the jury did, of course, regard all the circumstances surrounding the witnesses—their manner of testifying—their bias—their intelligence. Having determined it, as they have, we cannot say they have not determined it right, for there are no facts in the case to guide us, the one way or the other. The jury have weighed the evidence, and we are satisfied with their finding.

Another objection is raised to the instructions given on behalf of the plaintiff Roberts.

On a careful examination of them in connection with the evidence in the cause, we are unable to perceive any such error in them as would justify our interference. Nor do we see any error in refusing to give the eighth instruction asked by the defendant Whisler.

That instruction assumes that Roberts, by the mortgage, had no right to hold the property unless with Strickland's consent. It will be seen there was no provision in the mortgage that Strickland should retain the possession of the property. It transferred to Roberts the right of possession, as well as of property, at the time of its execution, subject only to be defeated by the payment of the money. Roberts, then, had the right to take possession of it, peaceably, without Strickland's consent, and having this right by force of the mortgage, although he obtained possession for a temporary purpose, he could retain that possession unless liens had intervened whilst in the possession of Strickland.

We therefore think the instruction was properly refused, and the judgment must be affirmed.

*Judgment affirmed.*